UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

WILLIE JAMES McGRAW,

        Plaintiff,                            Case No. 2:11-cv-370

v.

                                                    Honorable Gordon J. Quist

UNKNOWN TURNER et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

        I.        Factual allegations

Plaintiff is incarcerated in the Baraga Maximum Correctional Facility. In his *pro se* complaint, he sues Baraga Corrections Officers (unknown) Turner, (unknown) Reeder, (unknown) Hill, (unknown) Velmer and (unknown) Cummings.

Plaintiff first alleges that Defendant Reeder took cake from his lunch tray on March 26, 2011.  Two months later, on May 25, 2011, Plaintiff contends that Defendant Turner slammed the food slot on his hand and made threatening comments, such as, "I'll get you back," and "how long do you want to stay in seg?"  (Compl., docket #1, Page ID#3).  The same day, Plaintiff claims that Defendant Turner denied him writing supplies.  Plaintiff wrote grievances against Defendants Reeder and Turner regarding those incidents.  On June 6, 2011, Plaintiff claims that Officers Skytta and McPherson, who are not named as Defendants in this action, made threatening comments to him, including, "writing grievances on my friends only going to get your T.V. taken" and "I'll have you on A wing."  (*Id.*)

Plaintiff also raises claims related to a misconduct charge for threatening behavior that he received from Defendant Velmer on June 24, 2011.  (*See* Major Misconduct Report, docket #1-1, Page ID#22.)  At the time he received the misconduct charge, Plaintiff was being held in the administrative segregation unit.  Under the Incentives in Segregation Program (IISP), which is designed to reduce the overall length of segregation placement, prisoners are given incentives when they demonstrate good behavior.  (*See* MICH. DEP'T OF CORR., DOM 2011-6.)  As a result of the misconduct charge, Plaintiff's stage in the IISP was lowered, which in turn, caused him to lose the privilege of his television.   At the misconduct hearing, the hearing officer dismissed the charge without considering the merits because there had been a defect in the notice provided to Plaintiff.  Despite the dismissal of the charge, Plaintiff was not reinstated to the same stage in the IISP that he occupied before the misconduct charge, and his television was not returned.  When Plaintiff grieved the matter, the Step I respondent stated that his stage in IISP was lowered due to his behavior toward the RUO and was not affected by the fact that the misconduct charge was dismissed on a technicality.  (Step I Grievance Response, AMF 11-07-02781-17E, Page ID#28.)  The Step II respondent upheld the decision at Step I and "encouraged [Plaintiff] to work through the necessary

- 2 -

stages of the program in order to experience the benefits of its design." (Step II Grievance Response, AMF 11-07-02781-17E, Page ID#30.)

With regard to the misconduct charge, Plaintiff further alleges that Defendant Cummings refused to allow him to sign the misconduct during the review. When Plaintiff told Cummings that he was going to write a grievance against him, Cummings responded, "coon you write a grievance on me I will personally see you put on modified access."[1] (Compl., docket #1, Page ID#3.) Plaintiff also claims that after Defendant Hill witnessed Defendant Velmer write the misconduct ticket against Plaintiff for threatening behavior, "c/o Hill retaliates saying 'Hey nigger get that T.V. ready I want it' for previous grievances written on c/o Turner . . . ." (Compl., docket #1, Page ID#4.) Plaintiff wrote grievances against Defendants Cummings and Hill.

Finally, Plaintiff alleges that Defendant Velmer denied him writing paper and expedited legal mail forms on July 27, 2011.

Plaintiff contends that Defendants engaged in a campaign of "harassment, intimidation, conspiracy and retaliation." (Compl., Page ID#4.) He asserts violations of his First, Fourth, Eighth and Fourteenth Amendment rights. Plaintiff seeks compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

---

[1]Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH. (eff. July 9, 2007). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ KK.

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.   **Eighth Amendment**

Several of Plaintiff's claims implicate his Eighth Amendment right against cruel and unusual punishment. The Eighth Amendment imposes a constitutional limitation on the power of

the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiff's only allegation against Defendant Reeder is that Reeder took cake from his lunch tray on one occasion. Prisoners must receive adequate nutrition to maintain normal health. *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). Plaintiff clearly was not deprived of adequate nutrition as the result of Reeder taking his cake on one occasion. Moreover, to the extent Plaintiff contends that Reeder's conduct was intended as harassment and that other Defendants, including Cummings and Hill, verbally harassed him and used racial epithets, he fails to state a claim. Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits). Even the occasional or sporadic use of racial slurs does not rise to a level of constitutional magnitude. *See Torres v. Oakland County*, 758 F.2d 147, 152 (6th Cir. 1985);

*Brown v. Toombs*, No. 92-1756, 1993 WL 11882, at * 1 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Plaintiff's claim that Defendant Turner slammed the food slot on his hand also implicates the Eighth Amendment. Plaintiff, however, does not allege that he suffered any physical injury as a result of the alleged incident. Absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id.; see also Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Taylor v. United States*, 161 F. App'x 483, 486-87 (6th Cir. 2007); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005). Plaintiff alleges no physical injury. Consequently, his claim is barred.

Plaintiff, therefore, fails to state an Eighth Amendment claim against any of the named Defendants.

B.    **First Amendment Access to the Courts**

Plaintiff's allegations that Defendant Turner denied him writing supplies on May 25, 2011, and that Defendant Velmer denied him writing paper and expedited legal mail forms on July 27, 2011, implicate his First Amendment right of access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's

constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). Plaintiff does not make any allegations whatsoever that Defendants' conduct resulted in actual injury to pending or contemplated litigation. Accordingly, he fails to state a claim.

### C. Due Process

With regard to the misconduct charge for threatening behavior written by Defendant Velmer, Plaintiff alleges that Defendant Cummings refused to let him sign the misconduct during the review. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. In this case, the misconduct charge was dismissed as the result of a defect in the notice provided to Plaintiff, and, thus, he was not deprived of good-time credits. Because Plaintiff does not have a liberty interest at stake, he cannot state a due process claim arising from the misconduct proceedings. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)) ("Without a protected liberty or property interest, there can be no federal procedural due process claim.").

Plaintiff's allegations regarding his television also fail to state a claim. Plaintiff does not allege that he was permanently deprived of his property; rather, he lost the privilege of using his television because his stage in the IISP was lowered after he threatened Defendant Velmer. Under the IISP, prisoners are evaluated at least once a week to determine whether they should be placed

at a higher or lower stage. (*See* MICH. DEP'T CORR., DOM-2011-6.) As Plaintiff receives at least weekly review of his stage in the IISP, and will have his television privileges reinstated if his stage is raised, the temporary deprivation of his television does not violate his due process rights. *Schmitt v. Mulvey*, No. 04-10717, 2006 WL 516755, at *3 (D.Mass. Mar. 1, 2006) (loss of television, radio and telephone privileges for a couple of months does not amount to an atypical and significant hardship that would trigger the Due Process Clause). Moreover, forcing a prisoner to live without a television does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim. *See Smith v. Sapp*, Nos. 97-5642, 97-5921, 1998 WL 1232, at *1 (6th Cir. Jun. 19, 1998), (citing *Rhodes*, 452 U.S. at 347-49).

### D. **Conspiracy**

Plaintiff generally asserts that Defendants conspired to violate his federal rights. To state a claim for conspiracy, a plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). A plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996) ("[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim.").

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred

at a higher or lower stage. (*See* MICH. DEP'T CORR., DOM-2011-6.) As Plaintiff receives at least weekly review of his stage in the IISP, and will have his television privileges reinstated if his stage is raised, the temporary deprivation of his television does not violate his due process rights. *Schmitt v. Mulvey*, No. 04-10717, 2006 WL 516755, at *3 (D.Mass. Mar. 1, 2006) (loss of television, radio and telephone privileges for a couple of months does not amount to an atypical and significant hardship that would trigger the Due Process Clause). Moreover, forcing a prisoner to live without a television does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim. *See Smith v. Sapp*, Nos. 97-5642, 97-5921, 1998 WL 1232, at *1 (6th Cir. Jun. 19, 1998), (citing *Rhodes*, 452 U.S. at 347-49).

### D. **Conspiracy**

Plaintiff generally asserts that Defendants conspired to violate his federal rights. To state a claim for conspiracy, a plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). A plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996) ("[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim.").

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred

over a period of time involving numerous individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 129 S. Ct. at 1250. In light of the far more likely possibility that the various incidents occurring over a period of months were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

E. **Retaliation**

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff makes numerous factual allegations that directly assert or suggest that Defendants retaliated against him. For example, Plaintiff alleges that Defendant Turner made threatening comments, such as, "I'll get you back" and "how long do you want to stay in seg?" when he slammed the food slot on Plaintiff's hand. (Compl., docket #1, Page ID#3). Plaintiff does not allege that he was engaged in protected conduct at the time Defendant Turner made the alleged threats; therefore, he fails to state a claim for retaliation.

Plaintiff further alleges that when he told Defendant Cummings that he was going to write a grievance against him for not allowing Plaintiff to sign the misconduct, Cummings threatened to put him on modified access. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). However, the Sixth Circuit has held that placement on modified access is not "adverse action" for purposes of a retaliation claim. In *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001), the Court stated:

> Kennedy failed to state a retaliation claim because no adverse action "that would deter a person of ordinary firmness from continuing to engage in that conduct" was taken against him. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Placement on modified access to the grievance procedure does not constitute such an action. Placement on modified access did not deprive Kennedy of the ability to file civil rights actions in federal court. Kennedy's placement on modified access to the grievance procedure merely enabled prison officials to screen Kennedy's grievances prior to filing to determine whether they were grievable, non-frivolous, and non-duplicative. *See* MICH. DEP'T OF CORR. POLICY DIRECTIVE 03.02.130(II)(PP). Moreover, Kennedy was not deterred from continuing to engage in the protected conduct because he continued to attempt to file grievances.

*See also Corsetti v. McGinnis*, No. 00-1409, 2001 WL 1298830, at *2 (6th Cir. Aug. 7, 2001). Because placement on modified access is not adverse action, Cummings' alleged threat to put Plaintiff on modified access cannot constitute adverse action. Plaintiff, therefore, fails to state a retaliation claim against Defendant Cummings.

Plaintiff also alleges that after Defendant Hill witnessed Velmer write the misconduct ticket against Plaintiff for threatening behavior, "c/o Hill retaliates saying 'Hey nigger get that T.V. ready I want it' for previous grievances written on c/o Turner . . . ." (Compl., docket #1, Page ID#4.) Thus, Plaintiff appears to allege that Hill's threat to take away his television was made in retaliation for Plaintiff's previous grievances against Turner. Assuming Plaintiff could satisfy the first two elements of a retaliation claim, his contention that Hill's threat was retaliation for grievances Plaintiff filed a month earlier against Defendant Turner is wholly speculative and conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Id.* at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation in this action. Taking Hill's comment in context, he was anticipating that Plaintiff's television was going to be taken away as a result of his threatening behavior toward Velmer. There was nothing in Hill's comment that suggested that taking away Plaintiff's television was related to his filing of grievances. Plaintiff has not presented any facts to support his conclusion that Defendant Hill retaliated against him because he filed a grievance against another officer. Accordingly, his speculative allegation fails to state a claim. *See Ashcroft*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[2]

---

[2] Plaintiff also alleges that Officers Skytta and McPherson made threatening comments to him, including, "writing grievances on my friends only going to get your T.V. taken" and "I'll have you on A wing." However, those officers are not named as Defendants in this action.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: November 8, 2011            /s/ Gordon J. Quist
                                   GORDON J. QUIST
                                   UNITED STATES DISTRICT JUDGE